

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JUL 2 0 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
)  Case No.
(1) Apple Cellular Telephone )
Model: iPhone 6 )    **18MJ4095**
IMEI: 359304065119359 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A incorporated herein by reference

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952, 960 | Conspiracy to Import Controlled Substances |

The application is based on these facts:
See Attached Affidavit of Special Agent Hector Perea incorporated herein by reference

☐ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Hector Perea, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-20-18      _____
*Judge's signature*

City and state: San Diego, California      Hon. Nita L. Stormes, U.S. Magistrate Judge
*Printed name and title*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| IN THE MATTER OF THE SEARCH OF | **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** |
|---|---|
| One (1) Apple Cellular Telephone Model: iPhone 6 IMEI: 359304065119359 | |

I, Hector Perea, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device:

   a. One (1) Apple Cellular Telephone
   Model: iPhone 6
   IMEI: 359304065119359
   (herein referred to as "**Target Device**"), as described in Attachment A

2. Agents seized the **Target Device** on April 17, 2018, from Cierra Alexandrea PEACHER (herein referred to as "PEACHER") at the time she was arrested at the San Ysidro Port of Entry, San Diego, California, for the importation of approximately 16.06 kilograms of methamphetamine in violation of Title 21, United States Code, Sections 952, 960, Importation of a Controlled Substance. At the time of her arrest, PEACHER was the driver and sole occupant of a 2012 white Volkswagen Jetta bearing California plates. The **Target Device** is currently in the possession of the Homeland Security Investigations, San Diego Metro Vault, located at 880 Front Street, Suite 3200, San Diego, California 92101.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

## EXPERIENCE AND TRAINING

4. I am a Special Agent ("SA") with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed with HSI since March 2008 and currently assigned to the San Diego Marine Task Force (MTF). The San Diego MTF is multi-agency initiative aimed at identifying, targeting, and eliminating vulnerabilities to the security of the United States related to the San Diego seaport complex, as well as the surrounding transportation and maritime corridors.

5. My training includes attending the Federal Law Enforcement Training Center where I completed twenty-two (22) weeks of HSI Special Agent Training Program and an additional two (2) weeks of Advance Customs Fraud Training, a course devoted solely devoted to customs fraud and money laundering. Through my training and experience, I have gained extensive knowledge in detecting elements of criminal activity as it relates to narcotics/currency smuggling, trade fraud, and money laundering. I have consulted or have been the affiant of over 50 search warrants. I have made numerous arrests and have conducted several investigations of such crimes related to, narcotics, money laundering, and customs fraud using a variety of investigative techniques.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load

vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular telephones.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

    e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

    f. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

8. Subscriber Identity Module ("SIM") Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a

3

smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

9. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search a cellular telephone that is believed to contain evidence of violations of 21 U.S.C. §§ 952, 960.

10. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other HSI Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

**FACTS SUPPORTING PROBABLE CAUSE**

11. On April 17, 2018, at approximately 10:46 a.m., PEACHER attempted to enter the United States from Mexico at the San Ysidro Port of Entry, San Diego, California, as the driver and sole occupant of a white 2012 Volkswagen Jetta bearing California plates (herein referred to as "**Subject Vehicle**"). A pre-primary Customs and Border Protection Officer (CBPO) then referred PEACHER for secondary inspection. Once at the secondary inspection lot, CBPOs encountered a non-factory compartment behind the center console of the **Subject Vehicle**. CBPOs conducted a search of the compartment and subsequently discovered five (5) clear vacuum sealed packages that contained a crystal-like substance. Shortly thereafter, CBPOs discovered tool marks on the sending unit on top of the gas tank. The gas tank was removed and CBPOs discovered an additional eleven (11) packages containing a crystal-like substance concealed within.

4

12. The total weight of the 16 packages discovered by CBPOs was 16.06 kilograms. The packages containing the crystalized substance tested positive for having the properties and characteristics of methamphetamine.

13. At the time of her arrest, PEACHER was in possession of the **Target Device** which was located inside the vehicle along with the rest of her personal effects. Based upon my experience investigating narcotics smugglers and the particular investigation in this case, I believe that PEACHER likely used the **Target Device** to coordinate the importation of methamphetamine into the United States.

14. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Device** contains evidence of violations of 21 U.S.C. §§ 952 and 960, including communications, records, or data, including but not limited to emails, text messages, other social messaging applications (such as Whatsapp or Facebook) photographs, audio files, videos, or location data:

    a. tending to indicate efforts to import methamphetamine, cocaine, or some other federally controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, cocaine, or some other federally controlled substance from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, cocaine, or some other federally controlled substance from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, cocaine, or some other federally controlled substance from Mexico into the United States;

    e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

5

15. Based upon my experience and investigation in this case, I believe that PEACHER is involved in narcotics smuggling activities. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of PEACHER, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of **Target Device.**

16. Finally, drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Furthermore, in this case, evidence supports probable cause that PEACHER began working with his/her drug smuggling co-conspirators as early as February 1, 2018. This is based upon a review of TECS records and crossing history. TECS records for PEACHER show that she has only made three crossing from Mexico into the United States in 2018 and that the first one was on February 5, 2018. During her post-arrest interview she indicated that she had made more than one trip to Mexico for the same purpose as the current trip in which she was arrested. She stated that she had crossed another vehicle for the same people in March 2018. TECS records also indicate a crossing in March 2018. In my training and experience these prior crossing would indicate that PEACHER was meeting with co-conspirators in Mexico and familiarizing herself with crossing the border. Given these facts, I respectfully request permission to search Target Device for data beginning on February 1, 2018, up to and including April 20, 2018.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the

6

device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

7

## CONCLUSION

20. Based on all of the facts and circumstances described above, there is probable cause to conclude that Cierra Alexandrea PEACHER used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

21. Because the **Target Device** was promptly seized during the investigation of PEACHER's trafficking activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by PEACHER continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from February 1, 2018 to April 20, 2018.

22. THEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Hector Perea
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this  20  day of July, 2018.

The Honorable Nita L. Stormes
United States Magistrate Judge

8

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One (1) Apple Cellular Telephone
> Model: iPhone 6
> IMEI: 359304065119359
> **(Target Device)**

**Target Device** is currently in the possession of Homeland Security Investigations, San Diego Metro Vault, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data for the period February 1, 2018 to April 20, 2018:

   a. tending to indicate efforts to import methamphetamine, cocaine, or some other federally controlled substance from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the importation of methamphetamine, cocaine, or some other federally controlled substance from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, cocaine, or some other federally controlled substance from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, cocaine, or some other federally controlled substance from Mexico into the United States;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 952, 960, Importation of a Controlled Substance.